# Hinson *v.* Bush.

*Proceedings for Dower by Lawful Wife and by Divorced Wife.*

1. *Right of dower as affected by divorce.*—A decree of divorce granted to the husband, on the ground of voluntary abandonment by the wife (Code of 1886, § 2322), bars her right of dower. (Overruling *Williams v. Hale*, 71 Ala. 83.)

APPEAL from Butler Probate Court.
Heard before Hon. L. M. LANE.
          and
APPEAL from Butler Chancery Court.
Heard before Hon. JNO. A. FOSTER.

[Hinson v. Bush.]

The lawful wife, and the divorced wife, of the deceased R. H. Bush applied for dower interest in deceased's estate, one in the Probate Court, the latter in the Chancery Court. The lower courts decided in favor of each applicant respectively, and the administrators of the estate bring their appeals, from each court. The following opinion is rendered, disposing of both appeals.

J. M. WHITEHEAD, and JOHN GAMBLE, for appellants. At common law divorce barred dower.—2 Bish. on Mar. & Div. §§ 705, 706; 1 Coke, Lit. 32 a; *Given v. Marr*; 27 Maine 212; 8 Blankf. 218; 6 Watts & S. 85; 3 Kent's Com. 53; 2 Green, Iowa 601, n.; 6 Ind. 229; 4 Wright Pa. 157; 11 Wis. 126; 10 Ohio St. 596; 9 C. E. Green, 440; *Lash v. Lash*, 58 Ind.; 81 Ill. 405. The second wife cannot be deprived of her dower by the divorced first wife; if the first wife takes dower, then there will be two dowers. If a man should divorce three (3) wives, and marry a fourth and then die, could there be four dowers, four one-thirds of his estate.—See also Code of 1886, §§ 2335, 1894, 1915, 1908.—Code of 1876, § 2698. Who is entitled to the homestead, the lawful or divorced wife? Cited also 17 Mo. 87; 5 Iowa, 232.

J. C. RICHARDSON, and R. E. STEINER, *contra*, for Mary M. Bush. It is the settled law in Ala. that a divorce obtained by the husband based on any ground but the adultery of the wife does not bar her right of dower.— *Williams v. Hale*, 71 Ala. 87; *Turner v. Turner*, 44 Ala. Code of 1886 § 2335. The wife divorced for any other cause than adultery is the widow of the man putting her aside.—*Wait v. Wait*, 4 N. Y. Rep. 95; 2 Scrib. on Dower 514–521; Code 1886 § 1892: Cited also, 36 Ala. 533; 11 Ala. 386; 21 Ala. 530; 3 Abb. 165; 36 Barb. 414; 44 Barb. 198; 8 Black 218: 8 N. Y. 111.

WATTS & SON, for Annie J. Bush.—The Ala. Statutes indicate with unerring certainty who is entitled to dower in the husband's estate.—Code 1886, §§ 1892; 1900; 1908; 2543; 2545; 2546. A divorce *a vinculo matrimonii* bars the claim of dower.—4 Kent. 55; 2 Ind. 233; 23 Ind. 71; 11 Wis. 126; 40 Pa. St. 151; 51 N. H. 405; 2 Iowa, 604; 81 Ill. 465; 5 Iowa 253; 6 Ind; 229. There cannot be two wives lawfully entitled to dower,—24. N. J. Eq. 440; 17 Mo.

24

87; Bish. on Mar. & Div. §§ 706–707; 2 Scrib. on Dower, 515–519; 114 Ill. 375; 61 Iowa, 174; 59 Ib. 699; 76 Me. 85; 60 Ib. 447. The cases of *Williams v. Hale*, 71 Ala., and *Wait v. Wait*, 4 N. Y. discussed.

STONE C. J.—Richard H. Bush was a widower with children, some adult and some minors. In December 1880 he intermarried with Mary M. Johnson. There was no fruit of this marriage. They separated about a year after the marriage, and in 1884 the said Richard H. obtained a divorce from the said Mary M., *a vinculo matrimonii*, for her voluntary abandonment of his bed and board for two years next preceding the filing of the bill. Code of 1886, § 2322. It is not shown that she either obtained or asked for maintenance or alimony. In her bill after noticed it is averred that she did not.

In 1884, after the divorce was granted, the said Richard H. intermarried with Anna J. Harbin. One child, an infant of tender years, is the fruit of this marriage.

In February 1887, the said Richard H. died intestate, leaving several children, and some grand-children, offspring of children who had died before his death. He owned a tract of land of more than a thousand acres, on which he re-sided with his family. His family consisted of the said Anna J., his wife, their infant child, a daughter by his first marriage, a minor, and some grand-children, also minors.

A homestead of 160 acres of land including the residence, and other exemptions, were allotted and set apart to the said Anna J., and the minor children living with her.—Code of 1886, §§ 2507; 2511; 2543; 2545; 2546; *et seq.*

In July 1887, the said Anna J. filed her petition in the probate court, praying an allotment of dower to her by metes and bounds, out of the lands of which the said Richard H. died seized.—Code of 1886, §§ 1900 *et seq.* Such proceed-ings were thereupon had, as that at the October term 1887 said court made its decree, granting the prayer of the petition, and making the necessary orders for its allotment by metes and bounds.—Code of 1886, § 1906. No exception is taken to the mere form of these proceedings, and they appear to be regular.

On the 17th. day of September 1887, the said Mary M., the divorced wife, filed her bill in chancery, claiming dower and distribution in the estate of the said Richard H. Bush, under the negative influence of § 2335 of the Code of 1886;

§ 2698, Code of 1876. The administrators and heirs of the said Richard H., as also the said Anna J. are made defendants to the bill, and the averments set forth the two marriages, the divorce and the ground on which it was granted, and the other facts set forth above. The prayer is for dower, distributive interest and homestead and other exemptions in the estate of said Richard H.; the said Mary M. claiming that her right is paramount to that of the said Anna J. She also prayed that the allotment of the homestead and other exemptions made to the said Anna J., be vacated and annulled. There was a demurrer to the bill, setting forth as grounds the peculiar relations of the parties as set forth above. The chancellor overruled the demurrer, and decided that the bill contained equity.

The administrator and other defendants have appealed in each of said cases, and they are now in our hands for joint consideration and decision. In the case of Anna J., the last of the wives, the decree of the Probate Court, granting her dower, is assigned as error. In the case of Mary M., the divorced wife, the decree of the chancellor, overruling the defendants' demurrer, is complained of. We are thus squarely confronted with the separate suits of two demandants, each claiming to be the surviving widow of one and the same intestate, deceased husband, and each demanding the dower and distributive rights the law secures to a surviving widow. Is each one entitled, and if not, which one has the right to the exclusion of the other?

Our statute, Code of 1886, § 2322, provides that divorces from the bonds of matrimony may be granted in favor of either party, "for voluntary abandonment from bed and board for two years next preceding the filing of the bill." § 2335: "A divorce for the adultery of the wife bars her of her dower, and of any distributive share in the personal estate of the husband."

The case of *Williams v. Hale*, 71 Ala. 83, was an application by a wife who had been divorced for abandonment, to have dower allotted in the lands of the husband. There had been no later marriage in that case, and consequently there was but one demandant of dower. Controlled by well known canons of interpretation, we reluctantly affirmed that she was entitled to dower. We do not know how to answer the argument there made, on any known rules of interpretation.

New York has had statutes on this subject from an early day, commencing, possibly, with the "Act concerning dower,"

passed January 26, 1787.—2 Laws of New York, 347–9, republished in 1886. In *Wait v. Wait*, 4 Comstock, 95—decided in 1850—it was held, in part on reasoning very similar to that employed in *Williams v. Hale*, that a divorce *a vinculo* granted to the wife for the adultery of the husband, does not bar the wife's dower. The court, among other things, said: "It is true that the decree is, that the marriage be dissolved, and that each party be freed from the obligations thereof. This dissolution and release, however, is not absolute. The wife, when the husband is the guilty party, is still entitled to her support, and the obligations of marriage still rest upon the husband, so far as to render it unlawful for him again to marry." In the later and celebrated case of *Forrest v. Forrest*, 13 Superior Court, N. Y. 102, the divorce, as in the former case, was granted to the wife, for the fault of the husband. The wife's right to dower, should she survive her husband, was made a factor in determining the extent of her alimony.

The case before us makes it our duty to re-survey the grounds on which we determined the case of *Williams v. Hale*. It opens up a much wider field for contemplation than was then presented, and we must deal with stubborn facts, as well as many possibilities which the facts suggest. What then are some of the impregnable, legal facts in this case? The divorce dissolved the bonds of matrimony, at least so far as the husband was concerned. He ceased to have any right to the wife's society, or to her services. He was, by the decree, also deprived of all right to control her separate estate, if she had such estate.—Code of 1876, § 2700. This would necessarily take from him all right to receive the income and profits of her estate, and would free her from the disability of selling and charging her estate without his concurrence. If it did not, then her property must remain tied up beyond all human power of disposition, so long as the husband may live. And, save as provision may be made for her maintenance and alimony in the divorce proceedings, he would be absolved from all liabilities to and on account of his relations to her, during her life.

How about the husband's rights? He can marry again, for the law expressly authorizes it. Does he thereby become the husband of two living wives? The law forbids that. The fact that he can and does marry again, only makes emphatic that which the decree has declared, that the bonds of the former marriage are dissolved. And if dissolved, how

[Hinson v Bush.]

can they exert any continuing, binding force? Dower is the resultant of marriage, seizin and death. It is but the prolongation to the surviving wife of the interest in the husband's estate, conferred by the marriage. At common law, the surviving wife's right to dower had its correlation or recompense in the surviving husband's right of curtesy, sometimes called the husband's dower. Under our former system, known as' the married woman's law of 1850, re-enacted in the Code of 1852, the surviving husband of an intestate wife was entitled to a life-estate in the lands of which she died seized, and to a half interest absolutely in her personal estate. This was the law for more than thirty years after the enactment of the statute, under which the divorced wife claims dower in this case. Did this right remain in the husband of the said Mary M., after she was divorced from him by decree dissolving the matrimonial bonds?

Dower is an estate for the life of the widow in certain defined classes of real estate of the husband, "to which she has not relinquished her right during the marriage."—Code of 1886, § 1892. Now, if the divorced wife is entitled to dower, the right extends to all lands owned by the husband during the marriage, to which she has not relinquished her right; and the relinquishment to be valid, must be made during the coverture, or marriage. It is manifest, if she be dowable, that he can not convey a good title to any lands he may own without her relinquishment. Was it intended, or expected, that he should be deprived of all right to dispose of his lands, except on the improbable, if not impossible condition of his obtaining the relinquishment of a wife, whom, it must be supposed, he had alienated by divorcing her? And is the marriage, which had been dissolved, to be considered so much in force, as to enable her, even if willing to do so improbable an act, to comply with the statute, which requires that the relinquishment shall be made during the marriage?

One of the causes justifying divorce from matrimonial bonds, under our statute, is incurable physical incapacity to enter into the marriage state. This includes what was known as canonical causes at the common law, one of which was incapacity to consummate the marriage. Marriages contracted by persons thus incapacitated were treated as a fraud perpetrated, and for that reason they were dissolved.—*Benton v. Benton*, 1 Day, 111; 1 Blackst. Com. 434; 1 Bish. Mar. & Div. (6th Ed.) § 105. Yet, under our statute, divorces *a vinculo* granted on this ground, are in the same cat-

egory as to dower rights, as all others, except those which are decreed for the proven adultery of the wife. If divorce for abandonment by the wife is no bar to her claim of dower, no argument can be predicated of our statutory provision which precludes her claim, if her divorcement is the result of her incurable physical incapacity to consummate the marriage. Can we hold that such marriage confers dower rights on the author of the fraud?

In this case there are two persons, each having filled the relation of wife to the same husband, and each claiming dower and distributive interest in one and the same decedent's estate. Are both entitled? A right to dower, as a rule, implies the precedent right to quarantine.—Code, 1886, § 1900. Is each entitled to this, and if not, which shall have it? In allotting dower, with certain exceptions not necessary to be noticed, "the entire house may be assigned to the widow." Code, § 1908. Which demandant is entitled to the dwelling-house?

An argument has been made before us, based on the conflicting claims of homestead and other exemptions, set up by the two surviving wives. The contention is, that inasmuch as the exemption, particularly of the use of the homestead, to two separate claimants is a physical impossibility, this is an insuperable obstacle to the double relief claimed in the two applications. As a mere conflict in the claim of homestead, and other exemptions, it is not perceived that any difficulty is encountered. The statute, Code, § 2335, which it is supposed preserves the right of dower and distribution to the divorced wife for causes other than adultery, contains no such provision in reference to homestead or other exemptions. Manifestly these must go to the wife who fills that place at the death of the husband. She and she alone is entitled to them, to be enjoyed by her with the minor children, if there be any. But this fact furnishes an additional strong argument against the divorced wife's claim of dower. The homestead being set apart for the common enjoyment of the last wife and the minor children, it can not be assigned to the divorced wife, as part of her ·dower. Code, § 1908.

In *Williams v. Hale,* 71 Ala. 83, we collected many authorities, holding that after divorce from matrimonial bonds, dower can not be successfully claimed. To them we may add the following, some of which present the argument in very strong light.—*Dobson v. Butler,* 17 Mo. 87; *McCraney*

*v. McCrancy,* 5 Iowa, 232; *Starr v. Pease,* 8 Conn. 541; *Mattocks v. Stearns,* 9 Vt. 326. On the strength of these authorities, and on the argument we have employed above, we are convinced that the legislature never intended that two surviving widows of one and the same deceased husband shall each be entitled to dower and distribution in his estate; and contrary to a sound rule of interpretation, we hold that it was not intended that a wife who had been divorced *a vinculo,* can under any circumstances claim dower at the death of the husband.—*Williams v. Hale,* is overruled.

The judgment of the Probate Court, in the case of Anna J. Bush, appellee, is affirmed.

In the case of Mary M. Bush, appellee, the decree of the chancellor is reversed, and a decree here rendered, sustaining the demurrer to the bill.