WEINDEL, *Appellant*, v. WEINDEL *et al.*

### Division One, February 19, 1895.

**Dower:** HUSBAND'S PERSONAL ESTATE: DIVORCE: STATUTE.    While a woman divorced from her husband for his fault is entitled to "dower" under Revised Statutes, 1889, section 4526, yet such dower right does not include the share of the personal estate of the husband to which a widow is entitled under section 4517, Revised Statutes, 1889.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*Henry Kortjohn* and *Fisse & Allen* for appellant.

(1) Appellant having been divorced from Leonard Weindel, the testator, for his fault and misconduct, is entitled to dower in his personal as well as real estate.    Revised Statutes of Missouri, 1889, secs. 4517, 4526; *Ibid.,* secs. 105 to 108; *McFarland v. Baze's Adm'r,* 24 Mo. 157; *Hoyt v. Davis,* 21 Mo. App. 235; *Stokes v. O'Fallon,* 2 Mo. 32; *Davis v. Davis,* 5 Mo. 183; *McLaughlin v. McLaughlin,* 16 Mo. 242; *Stone v. Stone,* 18 Mo. 389; *Hastings v. Myer's Adm'r,* 21 Mo. 519; *Hayden's Adm'r v. Hayden's Adm'r,* 23 Mo. 398. (2) The stipulation and deed of Leonard Weindel were not properly received as evidence.    *Speck v. Dausman,* 7 Mo. App. 165; *Schmieding v. Doellner,* 10 Mo. App. 373.    (3) Neither the stipulation filed in the divorce case, the decree of divorce, nor the deed of Leonard Weindel, to the trustee of appellant, operates to release

or bar appellant's right to her dower in Leonard Weindel's personal estate. *Dudley v. Davenport,* 85 Mo; 462; *Perry v. Perryman,* 19 Mo. 469; *Bryant v. McCune,* 49 Mo. 546; *Hasenritter v. Hasenritter,* 77 Mo. 162; *In re Klostermann,* 6 Mo. App. 314; *Martien v. Norris,* 61 Mo. 465. (4) In reviewing an order of distribution appealed from the probate court, the appellate court will also review an order fixing the amount due from the administrator. *Branson v. Branson,* 102 Mo. 613.

*Rassieur & Schnurmacher* and *John A. Gilliam* for respondents.

(1) The stipulation and deed of Leonard Weindel were properly admitted in evidence. Catherine Weindel, while fighting her husband in the divorce court, without duress, aided and assisted by her lawyer and son, had, with her eyes open, made this stipulation, accepted this deed, received the benefit of the stipulation and decree, never appealed from it, or repudiated it, and is estopped to deny it or challenge it, and it was competent evidence against her. *Marshall v. Baynes,* 88 Va. 1040; *Ross v. Ross,* 21 Ore. 9; *Phillips v. Culleton,* 153 Mass. 17; *Richeson v. Simmons,* 47 Mo. 20; *Duff v. Wynkoop,* 74 Pa. St. 300; *Water Co. v. Middaugh,* 12 Colo. 434; *Israel v. Arthur,* 32 Pac. Rep. 68. (2) The permanent alimony given, with the stipulation and consent decree, settled all her rights to the property of Leonard Weindel, living or dead. There is no force in this case in section 4525, Revised Statutes, 1889, as it was long ago settled in this state that that applied only to realty. So determined, it being then section 8 of dower act, in *McLaughlin v. McLaughlin,* 16 Mo. 250. Such agreement will be enforced. *Garbut v. Bowling,* 81 Mo. 214; *White v. White,* 39 N. W.

Rep. 277; Browne on Divorce [1 Ed.], 246 and 280, 281; *Reid v. Reid*, 39 N. W. Rep. 102; 2 Bishop on Mar. and Div., sec. 427; 1 Bishop on Mar., Div. and Sep., sec. 702; 2 *Ibid.*, secs. 882, 884; *Crews v. Mooney*, 74 Mo. 26; *Moon v. Baum*, 58 Ind. 194; *Marshall v. Baynes*, 88 Va. 104; *Martin v. Martin*, 65 Iowa, 255. (3) The appellant is not the widow of Leonard Weindel, and is not entitled to a distributive share in his estate. *Order v. Koster*, 55 Mo. App. 186; *Taylor v. Ass'n*, 145 Mass. 136; *Dobson v. Butler*, 17 Mo. 89. At his death the appellant was not his wife or widow and therefore has no interest in his estate. *McKean v. Brown*, 83 Ky. 209. (4) Such a divorced woman is not a widow under the administration act. Secs. 105 to 110, R. S. 1889. *Dobson v. Butler*, 17 Mo. 87; Schouler on Dom. Rel. [4 Ed.], sec. 221; Schouler on Husband and Wife [1 Ed.], sec. 559; *Re Ensign*, 103 N. Y. 284; *Hinson v. Bush*, 4 S. Rep. 410; *Boyd's Appeal*, 38 Pa. St. 246; Bishop on Mar., Div. and Sep. sec. 1668. (5) A divorced wife never becomes the widow of person from whom divorced. *Jordan v. Clark*, 81 Ill. 465; *Rice v. Lumley*, 10 Ohio St. 596; *Gleason v. Emerson*, 51 N. H. 405; *Stahl v. Stahl*, 114 Ill. 375; Schouler on Husband and Wife, sec. 559; *Re Ensign*, 103 N. Y. 284; 2 Bishop on Mar., Div. and Sep., sec. 1628; *Chenowith v. Chenowith*, 14 Ind. 2; *Tyler v. Ass'n*, 145 Mass. 134.

BRACE, P. J.—Prior to the thirty-first day of October, 1884, the appellant, Catherine Weindel, was the wife of Leonard Weindel, deceased, late of the city of St. Louis. On that day, by a decree of the circuit court of said city, she was granted a divorce from her said husband for his fault, and, by consent, it was decreed by said court therein, that the said Leonard Weindel convey to said Catherine, or to a trustee for her use, cer-

tain real estate, described in the decree, of great value; and transfer to her, as her absolute property, certain personal property, also therein described. All of which was accordingly done. Of the marriage aforesaid there were born three children.

Afterward, the said Leonard was married again to the respondent Theresia Weindel, by whom he had one child, and, in the month of May, 1890, died testate, the owner of a large estate in personal property, but no real estate, leaving, as his survivors, his widow, the said Theresia, and his child by her, and the three children by the former marriage. By his will he made specific bequests to each of these children, and also to five other persons, whom he denominates stepchildren, and bequeathed the remainder of his estate to the said Theresia absolutely, who was also by the will made executrix thereof.

The said Theresia qualified as executrix, administered the estate, and, at the September term, 1892, of the probate court of the city of St. Louis, exhibited her account for final settlement as executrix of said estate, and for distribution thereof. Thereupon, the said Catherine presented her petition to said court, setting up the relation she had sustained to said deceased and praying for an order requiring the executrix to distribute to her a child's share of the personal estate of the said deceased "in accordance with section 4517, of the Revised Statutes of 1889."

The probate court refused to grant the prayer of the petitioner, approved the final settlement of the executrix, and made an order of distribution of the balance found to be in her hands, the effect of which was to distribute the whole of the estate of said testator in accordance with the provisions of his will. Whereupon, the said Catherine took an appeal to the circuit court of the city of St. Louis, where, upon a trial *de novo,*

like action was had, and orders made, as in the probate court. From which she appeals to this court, it being admitted on the trial that if the appellant is entitled to anything, the amount will exceed $2,500.

I.  The appellant's claim is based on the following sections of chapter 55 of the Revised Statutes of 1889, entitled "Dower":

"Section 4517.  Share of Widow in Personal Estate.—When the husband shall die, leaving a child or children, or other descendants, the widow shall be entitled absolutely to a share in the personal estate belonging to the husband at the time of his death, equal to the share of a child of such deceased husband."

"Section 4526.  Divorce, when and when not a bar.—If any woman be divorced from her husband, for the fault or misconduct of said husband, she shall not thereby lose her dower; but if the husband be divorced from the wife, for her fault or misconduct, she shall not be endowed."

The contention is that, "her dower," which she did not lose by being divorced from the said Leonard Weindel in 1884, by reason of the provisions of section 4526, includes an absolute share in the personal estate of which the said Leonard died possessed in 1890, equal to the share of one of his children.

In construing the statutes of this state for the purpose of ascertaining the meaning and intent of the lawmaker, the legislature has, by positive enactment, laid down as a leading canon of construction that "technical words and phrases, having a peculiar and appropriate meaning in law, shall be understood according to their technical import." R. S. 1889, sec. 6570. "Dower" is a technical word, "having a peculiar and appropriate meaning in law," that meaning being "the provision which the law makes for a widow out of the lands or tenements of her husband, for her support and the nur-

ture of her children.'' Bouvier's Law Dictionary, p. 563. As a legal term the word "dower" refers to real estate, exclusively. To speak of dower in personal property, is, in legal parlance, a solecism. Such also, in the main, is the popular acceptation of its meaning. Black's Law Dictionary, p. 393.

Giving, then, to the word "dower" in section 4526, its legal meaning, as we are required to do, it can be applied only to real estate of the said Leonard Weindel, and has no application to his personal property, unless it can be made to appear that such was the intention of the legislature, and this intention must be clearly defined to warrant us in disregarding this canon of construction. There is nothing in the text, purpose or history of the enactment to warrant such a departure, so far as we can see.

At common law no woman could have dower in the lands of her husband, unless the coverture continued up to the time of his death. A divorce *a vinculo* put an end to the claim for dower, and was granted by the courts only for causes which rendered the marriage void *ab initio*. The common law of England was first introduced into the territory of Missouri by an act of the territorial legislature, approved January 19, 1816 (1 Ter. Laws, 436), re-enacted after the organization of the state government by an act, approved February 12, 1825 (2 Rev. Laws of Mo., 1825, 491). From the year 1807 up to the organization of the state government, statutes had been enacted and were in force in the territories of Louisiana and Missouri, authorizing the granting of divorces *a vinculo* by the courts for causes other than those which rendered the marriage void *ab initio*. 1 Ter. Laws, chap. 31, p. 90; chap. 196, p. 517. These statutes were re-enacted after the organization of the state government by an act, approved January 17, 1825. 1 Revised Laws, 1825, p.

329. Cotemporaneous with these acts of the state legislature in 1825, making the common law of England the common law of the state, and authorizing its courts to grant divorces for causes other than those which would have rendered the marriage void *ab initio,* the section now under consideration was first enacted in the following form:

"Sec. 3. *Be it further enacted:* That, if any woman shall have been divorced from her husband, for the fault or misconduct of such husband (except where the marriage was void from the beginning) she shall not thereby lose her dower; but if such divorce be for her fault or misconduct, she shall forfeit her dower." 1 Rev. Laws, 1825, p. 333.

The evident and only purpose of the above section was to save to the wife who was without fault an existing right from the operation of a common law principle that would deprive her of that right as the consequence of an absolute divorce; the whole scope and meaning of the section being that, although at common law a woman can not have dower in the lands of her husband unless the coverture existed at the time of the death of the husband, nevertheless a woman whose discoverture has been caused by an absolute divorce before his death, for the fault or misconduct of her husband, shall not lose the dower right which she had in the lands at the time she thus became discovert. The defect to be remedied was a defect in the common law in its operation upon a right existing at the time of the divorce, and well defined by that law, that is to say, her right to dower in the lands of the husband, *inchoate* at the time of the divorce, to be consummate at the death of the husband. *Hunt v. Thompson,* 61 Mo. 148. This was the only right she had or could have had in the property of her husband, which she was liable to lose by an absolute divorce, and was the only property right the

section could operate upon; for, neither by the common law nor by the statute does a woman by marriage acquire or have any right in the personal property of her husband. *McLaughlin v. McLaughlin's Adm'r,* 16 Mo. 242.

The right which was saved to the appellant by section 4526 was the inchoate right of dower at the time of the divorce in the lands of which her husband was then seized. The right to a child's share in the personal property of the deceased husband, given by section 4517, is a right in the personal property, of which the husband was the owner *at the time of his death,* and is given to the woman who, by his death, becomes his widow. This construction seems to be clear when these two sections are read and considered by themselves, and there is nothing in the history of their enactment or the purpose thereof, so far as we can discover, that would warrant a different conclusion.

Section 4517 first made its appearance in our statutes in the revision of 1835 as section 2 of the Dower Act; the *first* section of which (being also the first section of the same act, now numbered section 4513 in the revision of 1889) reads as follows:

"Dower in real estate.—Every widow shall be endowed of the third part of all the lands whereof her husband or any other person to his use, was seized of an estate of inheritance, at any time during the marriage, to which she shall not have relinquished her right of dower, in the manner prescribed by law, to hold and enjoy during her natural life. Dower in leasehold estate for a term of twenty years or more shall be granted and assigned as in real estate; for a less term than twenty years, shall be granted and assigned as in personal property."

And in the revision of 1825 the provision made for the widow out of the personal property of her deceased

husband is contained in the same section with the provision declaring her dower in his real estate, with the common predicate that "she shall be endowed."

From all which it is argued that, as there is a legislative recognition in this state of a right of dower in personal, as well as in real, estate, and as the section saving to a woman her dower in case of divorce, for the fault of her husband, was originally placed in the dower act, with the provisions conferring dower in real and a share in personal property recognized as dower, and has been continued in that act ever since, the word "dower" in that section ought to be construed to include a share in the personal property of the deceased husband, as well as dower in his real estate.

To this contention it may be answered: *First.* "That the grouping of provisions in an extended statute, a code or a revision of laws, is, in general, designed for 'convenience of reference, not intended to control the interpretation.' Or, at most, it may be regarded as indicating the opinion of the draftsman, the legislators or codifiers, as to the proper classification of the various branches of the enactment; which may or may not be accurate." Endlich on Interpretation of Statutes, section 70.

*Second.* Conceding that the share given to the widow of a deceased husband is, in some modified, restricted and unusual sense, a right of "dower" by legislative recognition, still, it is not within the meaning of that word as used in section 4526, for the reason already indicated, that it is not within the technical meaning of the word, and is not within the letter and purpose of the enactment. While section 4526 saves to a woman, divorced from her husband for his fault, dower in the estate of a living husband, section 4517 gives a child's share in personal property only to the widow of a deceased husband. A divorce *a vinculo*

annuls the marital relation.   The parties are thereafter
as though they were never married; and when the man
dies, the woman who survives does not thereby become
his widow and is not entitled to take a child's share in
his personal property, call it what you may, under the
provisions of section 4517.   The thing which she had,
and which she would have lost but for section 4526, by
the common law was dower proper, and not a child's
share, a thing she did not have and which, therefore,
she could not have lost, and which was not intended to
be included in the term dower as used in that section.

We are cited to several decisions of this court, in
which the share given by statute to the widow of a
deceased husband in the personal property of which he
died possessed, is spoken of and treated as "dower;"
but in none of these cases did it become necessary to
distinguish between dower proper and the share thus
given to the widow, and they add nothing to the force
of the argument drawn from the statute on this subject.

The only case to which we are cited, or which we
have been able to find, that gives any color of support
to the plaintiff's contention, is *Hoyt v. Davis*, 21 Mo.
App. 235, in which it was held by the St. Louis court
of appeals that the right of the widow to a share in the
personal estate of her deceased husband was barred by
her "voluntarily leaving her husband and going away
and continuing with an adulterer," under the provi-
sions of section 4532 of the dower act.   While the con-
clusion reached in that case may be said to have been
based in part upon decisions of the supreme court
rcognizing the share of the widow in the personal estate
of her deceased husband as dower in some qualified
sense, yet, the court was evidently not satisfied to rest
its conclusion upon these decisions, or the language of
that statute read in the light of its purpose, as mani-

fested in its history, but, in the main, upon another ground, thus stated in the language of the opinion:

"But if we reason upon the broader ground of the manifest purpose and policy of the statute [section 4532] it admits of no distinction between the wife's right to dower in her deceased husband's realty and her share in his personalty, by whatever name the latter may be called. The statute is founded upon a principle of sound morality and public policy, which admits of no distinction founded upon the difference between real and personal property. That principle is that the wife who wholly repudiates her marital obligation by abandoning her husband and living with an adulterer, and who is not subsequently received back by him, forfeits thereby all right and interest in his estate after death, of whatever description, which the law vests in her in her character as wife. She can not repudiate, while her husband lives, all the obligations of the marital relations, and take all the benefits which remain after he dies."

It goes without saying that there is, in the case in hand, no such ground upon which to rest a like conclusion, or reason for refusing to make a proper legal distinction between real and personal property in the marital relation. The case, of course, is not in point, and gives support to appellant's contention only in recognizing that, under the statute and decisions of the supreme court, there is in this state such a thing as statutory dower in the personal property of a deceased husband. It is, however, to be noted that many of the decisions cited in support of this proposition by the court of appeals were cases in which the widow's allowance, under the administration act, was under consideration and was called dower—a provision, possessing more of the attributes of dower than her share in the personalty under section 4517, since that allowance is

not subject to the debts of her deceased husband. And, yet, in the only case in this state, before the present, so far as we are advised, in which a divorced woman made a claim for an allowance out of the personal property of her divorced husband, deceased, as saved to her by virtue of section 4526, this court held that this provision, more nearly resembling dower than a share, was "for the benefit of the widow and family, and that the widow therein named must have been, at the time of the death, the wife of the husband; that the relation of husband and wife must have existed between them up to the death; that a wife, when divorced from her husband, is not, and can not be, the widow contemplated in the statute of administration." *Dobson's Adm'r v. Butler's Adm'r,* 17 Mo. 87. While this case is not precisely in point, yet the case in hand is within its reasoning and principle.

In the opinion the court says: "Suppose a husband has been divorced from his wife, being himself declared the guilty party,  *  *  *  he marries, and should afterward die, leaving his last and first wife both living: can it be that these two *widows* are by law entitled to come in and take each all the articles mentioned in section 29, and each the $200 in section 30 of the administration act? This is absurd. If it could be so, then the wife first divorced might have married,  *  *  * and she might, by the death of her second husband, be the widow of two men, at the same time, and entitled to the money and property mentioned in this statute, of both estates—an occurrence never looked for nor contemplated by the legislature, and too absurd to be guarded against."

This reasoning is as applicable to the case in hand as to this case decided in 1852. Dower is given, "not for the sustenance of the widow alone, but for the nurture and education of her children." *Hastings v.*

The State ex rel. v. Slover.

*Myers' Adm'r*, 21 Mo. 519. The absurdity of the claim in either would be liable at any time in this era of multitudinous divorces to be intensified by three or four or more divorces and remarriages.

From what has been said, we think it manifest that the word "dower," in section 4526, can not be extended to embrace a share in the personal estate provided for the widow in section 4517, in the case of a prior divorced wife, who, in all cases, may be, and, as a matter of fact, in this case was, properly provided for, by way of alimony allowed in the decree of divorce. The judgment of the circuit court is affirmed. All concur.